UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD DAVIS, 40728-039,

        Plaintiff,                        CIVIL ACTION NO. 09-12142

    v.                                DISTRICT JUDGE JOHN CORBETT O'MEARA

CHRISTOPHER ZYCH, Warden,      MAGISTRATE JUDGE MARK A. RANDON
WILLIAM MALATINSKY, Medical
Director of FCI Milan, FEDERAL
BUREAU OF PRISONS,

        Defendants.
_____/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS'
MOTION TO DISMISS AND, ALTERNATIVELY, DEFENDANT
ZYCH'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 13)**

**I. INTRODUCTION**

Plaintiff, an inmate in the custody of the Federal Bureau of Prisons ("BOP"), filed this *Bivens* action[1] against the BOP, FCI-Milan Warden Chistopher Zych ("Zych"), and FCI-Milan Medical Director Dr. William Malatinsky, ("Dr. Malatinsky"), (collectively "Defendants") alleging a denial of adequate medical care in violation of the Eighth Amendment. Presently before the court is Defendants' motion to dismiss and, alternatively, Dr. Zych's motion for

---

[1] *Bivens* actions are those brought pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), which allows an action against federal employees for violations of constitutionally protected rights. A *Bivens* action is analogous to a claim under 42 U.S.C. § 1983, except the action is brought against a federal employee acting under color of federal law rather than a state employee under color of state law. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

- 1 -

summary judgment (Dkt. No. 13), which was referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  Defendants' motion seeks dismissal of Plaintiff's claims against them on five grounds: (1) that Plaintiff failed to administratively exhaust the majority of his complaint allegations; (2) that Zych and Dr. Malatinsky have qualified immunity; (3) that Plaintiff's only administratively exhausted claim alleges medical malpractice, which is insufficient to state a claim of deliberate indifference; (4) that Plaintiff cannot state a claim of deliberate indifference against Zych premised on respondeat superior; and (5) that a *Bivens* action cannot be maintained against a federal agency, such as the BOP.  Though untimely, Plaintiff filed a response to Defendants' motion on February 17, 2010. (Dkt. Nos. 14, 16 and 17).  However, since Defendant's arguments are well-taken, it is RECOMMENDED that motion be GRANTED and that Plaintiff's complaint be DISMISSED WITHOUT PREJUDICE.

**II.      BACKGROUND**

*A.      Plaintiff's Complaint Allegations*

According to his complaint, Plaintiff is currently serving an 85-month term of imprisonment at the Federal Correctional Institution in Milan, Michigan ("FCI-Milan"). (Dkt. No. 1, ¶ 2) The defendants are:  Zych, the current Warden of FCI-Milan, Dr. Malatinsky, the current Medical Director at FCI-Milan, and the BOP.  Plaintiff alleges that Zych and Dr. Malatinsky exercise "final unrestricted authority, at the institutional level over all inmate medical care." *Id.* at ¶ 7.

Plaintiff claims that, in early 2007, he experienced knee pain and that Dr. Malatinsky diagnosed him with osteoarthritis and prescribed "Lisinopril[2], Hydochlorothiazide (sp) and Ibuprofen." *Id*. at ¶ 10. Plaintiff alleges that, within a few days, he began to experience severe side effects (vomiting excessive amounts of blood, dizziness and swelling of his ankles) from the combination of medications, which continued to increase in frequency. *Id*. Plaintiff claims that, at Dr. Malatinsky's direction, he was not treated for these side effects. *Id*. at ¶ 10. He also alleges that, after passing out and being hospitalized for his condition, medical personnel at the hospital diagnosed inflammation to his stomach lining from the adverse drug interactions. *Id*. at ¶ 11. In particular, Plaintiff's brief in response to Defendants' motion claims that because he was taking blood pressure medications (Lisinopril and Hydrochlorothiazide), Ibuprofen and especially Piroxicam (a substitute pain medication he was later given) were contraindicated. (Dkt. No. 17, p. 3)

Plaintiff further alleges that he was prematurely released from the hospital and that the BOP has a practice of curtailing hospital visits. (Dkt. No. 1, ¶ 12) During a second visit to the hospital, Plaintiff states that he underwent a splenectomy[3] to permit repair of his veins, and an MRI revealed a torn meniscus in his knee – contrary to Dr. Malatinsky's diagnosis of osteoarthritis. *Id*. at ¶ 13. He claims that the splenectomy would have been avoided had "FCI-Milan health services" timely addressed his complaints when he sought treatment at the onset of

---

[2] Lisinopril is "an angiotensin-converting enzyme inhibitor used in the treatment of hypertension (alone or in combination with a thiazide diuretic [such as hydrochlorothiazide]. . . administered orally." *Dorland's Illustrated Medical Dictionary* (31st Ed.) 2007, p. 1080.

[3] Splenectomy - "excision [surgical removal] or extirpation [complete destruction or eradication] of the spleen. *Dorland's Illustrated Medical Dictionary* (31st Ed.) 2007, p. 1777.

his side effects. *Id.* Plaintiff also alleges that contrary to the hospital's instructions, Dr. Malatinsky denied him access to knee surgery. *Id.*

Plaintiff alleges deliberate indifference to his medical needs, in violation of his Eighth Amendment rights. He avers that:

> Defendants acted with deliberate indifference to [his] medical needs by: I) refusing to provide [him] with medical care on a timely basis at the onset of his illness; ii) [e]xposing [him] to permanent physical damage as a result of Defendants' deliberate indifference and iii) [c]ontinuing to deny [him] proper medical care even after [*sic*] Defendants' were fully apprised of [his] medical condition, which was [*sic*] exasercbated by Defendants' gross negligence. (Dkt. No. 1, ¶ 14)

Plaintiff seeks a court order directing FCI-Milan to follow the course of treatment recommended by the local hospital and its attending physicians. He also requests $500,000 in compensation for future medical costs.

## B. *The BOP's Grievance Procedure*

An administrative grievance process is available to federal prisoners to address conditions of confinement. The BOP has a four-step administrative process for resolving inmate grievances: (1) at the first step, the inmate is required to "present an issue of concern informally to staff...." 28 C.F.R. § 542.13; (2) if the grievance is not resolved to the inmate's satisfaction, he or she may then file a written Administrative Remedy Request within 20 days of the date the basis for the Request occurred. 28 C.F.R. § 542.14; (3) if still not satisfied, the inmate may submit a written appeal to the appropriate Regional Director within 20 days of when the Warden signed the step two response. 28 C.F.R. § 542.15; (4) the final step in the administrative process is a written appeal to the General Counsel within 30 days of the Regional Director's response. *Id.*

At the Step 2, (the Administrative Remedy Request level), the BOP's policy requires that inmates adhere to the following procedural rule:

> The inmate shall place a single complaint or a reasonable number of closely related issues on the form. If the inmate includes on a single form multiple unrelated issues, the submission shall be rejected and returned without response, and the inmate shall he advised to use a separate form for each unrelated issue.. . .

28 C.F.R. § 542.14(c)(2). As the policy notes, "[p]lacing a single issue or closely related issues on the single form facilitates indexing, and promotes efficient, timely and comprehensive attention to the issues raised." *Id.*

### C. *Plaintiff's Unexhausted Grievances*

Prior to filing the instant suit, Plaintiff filed four grievances at FCI-Milan.[4] However, three of the four grievances were *not* exhausted through all the four steps of the administrative process outlined above. Specifically: (1) the grievance seeking to reschedule the cancelled knee surgery at the hospital and challenging "Health Services staff and officials" prevention of that surgery (#490640) was not exhausted because a final appeal was not resubmitted at Step 4 (Dkt. No 13, Ex. 2, ¶ 5 and Attachment B); (2) the grievance seeking transfer to a new facility to receive appropriate treatment and compensation for pain and suffering (#498321) was not appealed (Dkt. No 13, Ex. 2, ¶ 6 and Attachment B); and (3) the grievance requesting not to be charged by health services for visits pertaining to his knee (#537154) was granted-in-part at Step 2 and not appealed (Dkt. No 13, Ex. 2, ¶ 7 and Attachment B).

---

[4] A grievance that is rejected at Step 2 due to a procedural defect and then resubmitted by the inmate is considered one grievance. Apparently, the resubmitted grievance keeps the same grievance number as the original but is distinguished by the identifier "-F1," "-F2," etc.

**D.    *Plaintiff's Exhausted Grievance***

Defendants do acknowledge that Plaintiff fully exhausted his administrative remedies by meeting BOP requirements as to grievance #472543-F2. (Dkt. No. 13, p. 3 and Ex. 2, ¶ 4)  This grievance was filed on November 14, 2007,[5] and stamped "received" on December 6, 2007.  It read:

> A [s]plenectomy had to be performed on me due to incompatible medication prescribed by [medical staff] under the authority of . . . [Dr. Malatinsky]. . . .  After it was established that I was/is taking high blood pressure medication . . . medical staff prescribed a pain medication . . . for a knee problem (torn cartilage).  It was later investigated and as a result it was found that [the pain medication] is a life threatening medication that is not supposed to be taken with [the blood pressure medication], and it was also determined that on 8/15/07 the medical emergency I experienced was a text book situation of the medical effects caused by taking [the pain medication] with [the blood pressure medication]. . . . This is a simple case of [m]edical [m]alpractice . . . .

Plaintiff does not dispute that he failed to exhaust his three other grievances.  He contends, instead, that he is not required to exhaust any subsequent complaint allegation that he failed to address in his only exhausted grievance. (Dkt. No. 17, pp. 9-10)

**III. ANALYSIS**

**A.    *Standard of Review***

**1.    *Fed. R. Civ. P. 12(b)(6)***

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint.  *Jones v. City of Carlisle,* 3 F.3d 945, 947 (6th Cir. 1993).  To state a claim

---

[5] Defendants' motion incorrectly states a date of November 18, 2007. (Dkt. No. 13, p. 3)

under 42 U.S.C. § 1983 or a *Bivens* action, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law (or federal law in this case). *West v. Atkins,* 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.,* 102 F.3d 810, 814 (6th Cir. 1996).

Where a plaintiff is proceeding without the assistance of counsel, the court is required to liberally construe the complaint and hold it to a less stringent standard than a similar pleading drafted by an attorney. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). However, courts may not rewrite a complaint to include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999), nor may courts construct the plaintiff's legal arguments for him, *Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993). Neither may the court "conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), nor create a claim for Plaintiff, *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975), because to hold otherwise would require the court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### 2. *Fed. R. Civ. P. 56*

Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Fed.R.Civ.P*. 56(c). In considering a motion for summary judgment, the evidence and all reasonable inferences must be construed in favor of the nonmoving party. *Tanner v. County of Lenawee*, 452 F.3d 472, 477 (6th Cir.2006).

Moreover, when a motion for summary judgment is filed, the adverse party may not "rely merely on allegations or denials in its own pleading; rather its response must-by affidavits or as otherwise provided in this rule-set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e).

## B.     *The Prison Litigation Reform Act*

### 1.     *The Meaning and Purpose of Proper Exhaustion*

Under the Prison Litigation Reform Act of 1995 ("PLRA"), an inmate must first have exhausted "such administrative remedies as are available" before filing suit in federal court. 42 U.S.C. § 1997e(a). In *Porter v. Nussle*, 534 U.S. 516, 525, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002), the Supreme Court explained that one of the purposes served by the exhaustion requirement is to "affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." In *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 2388, 165 L.Ed.2d 368 (2006), the Supreme Court stressed that the benefits of exhaustion "can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have an opportunity unless the grievant complies with the system's critical procedural rules."

Thus, where a prisoner abandons the administrative process and fails to complete all steps, he has failed to exhaust his remedies in compliance with the PLRA. *Jackson v. Walker*, 2008 WL 559693, *7 (E.D. Ky. 2008). Indeed, a prisoner does not exhaust available administrative remedies when he files a grievance but "d[oes] not appeal the denial of that complaint to the highest possible administrative level." *Wright v. Morris*, 111 F.3d 414, 417 n. 3 (6th Cir.) *cert. denied*, 522 U.S. 906, 118 S.Ct. 263, 139 L.Ed.2d 190 (1997); see also, *Freeman*

*v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999). A prisoner may not abandon the process before completion and then claim that he exhausted his remedies or argue that it is now futile for him to do so. *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir.1999); *see also, Moorer v. Price*, 83 Fed.Appx. 770, 771 (6th Cir. 2003) ("The prisoner cannot abandon the process before completion and argue that he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations.").

As the United States Supreme Court has held, the burden rests on the defendant to show that a plaintiff failed to exhaust when asserting exhaustion as an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910, 921, 166 L.Ed.2d 798 (2007) ("exhaustion is an affirmative defense ... and inmates are not required to specifically plead or demonstrate exhaustion in their complaints."). The Supreme Court defined the level of detail necessary to exhaust as simply compliance with the administrative grievance process. *Id*. Thus, exhaustion is satisfied if the plaintiff complied with the prison's grievance procedures and the defendant bears the burden of establishing otherwise. *See, Kramer v. Wilkinson*, 226 Fed.Appx. 461 (6th Cir. 2007) (A prisoner-plaintiff "does not bear the burden of specially pleading and proving exhaustion; rather, this affirmative defense may serve as a basis for dismissal only if raised and proven by the defendants.").

### 2. *Plaintiff's Claims Should be Limited to those Raised in his only Exhausted Grievance*

Plaintiff does not dispute that he failed to exhaust three of his four grievances. Instead, in order to pursue allegations in his complaint that were not administratively exhausted (i.e., the denial of knee surgery (Dkt. No. 1, ¶13) and subsequent denial of medical care (Dkt. No 1, ¶14)),

Plaintiff argues: (1) that he is not required to exhaust every complaint allegation – citing *Strong v. David*, 297 F.3d 646 (7th Cir. 2002) for the proposition that a prison grievance need not articulate legal theories or demand particular relief; and (2) that he raised these complaint allegations during the appeals process of his exhausted grievance (AR #472543-F2) and in an earlier rejected grievance. (Dkt. No. 17, pp. 9-12) Neither of these arguments is persuasive.

First, while it is true that a prison grievance, like other prisoner filings, are to be liberally construed, the grievance must, nevertheless, afford prison officials "fair notice of the alleged mistreatment or misconduct *that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint*." *LaFountain v. Martin*, 2009 WL 1546376 *2 (6th Cir. June 3, 2009) quoting, *Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006)(emphasis added). And, as Plaintiff correctly notes, "[no. . . doctrine prevents a prison system from requiring factual particularity in an internal grievance." *Strong v. David,* 297 F.3d 646, 649 (7th Cir. 2002). Plaintiff's exhausted grievance raised the single issue of the splenectomy allegedly caused by an improper combination of medications. As such, it failed to provide prison officials fair notice of Dr. Malatinsky's denial of knee surgery, any subsequent medical care issues, or for that matter any other area of dissatisfaction Plaintiff may have been experiencing at the time.

Second, as set forth above, the BOP's grievance procedure requires that each grievance contain "a single complaint or a reasonable number of closely related issues on the form," so that prison officials can focus directly on the issue(s) raised in the grievance. Plaintiff is not free to ignore this procedural rule and raise a host of other issues during the appeals process of his exhausted grievance. If these other issues were reasonably related to the "adverse drug interaction causing splenectomy issue," they should have been raised in the original grievance.

28 C.F.R. §542.14(c)(2 ).  If they were unrelated, they should have been filed as a separate grievance.  *Id.*

Plaintiff's response brief also includes extensive quotes from grievance # 472543-**F1**, (an earlier version of #472543) filed on November, 7, 2007.  However, prison staff timely notified Plaintiff that this grievance was rejected because it did not attempt an informal resolution as required by 28 C.F.R. §542.13 and included more than one continuation page in violation of 28 C.F.R. §542.14(c)(3).  Since grievance #472543-**F1** was rejected by FCI-Milan officials, and Plaintiff filed a conforming replacement grievance (#472543-**F2**) seven days later, issues raised in Plaintiff's rejected grievance cannot exhaust claims raised in his subsequent lawsuit. Accordingly, Plaintiff's lawsuit must be limited to the "adverse drug interaction causing splenectomy issue" – the only matter for which FCI-Milan officials were afforded fair notice to address administratively.

### B. *Plaintiff has Failed to Allege a Claim of Deliberate Indifference Against Defendants*.

A prisoner's claim that his constitutional right to medical treatment was violated is analyzed under the Eighth Amendment.  *See Estelle v. Gamble*, 429 U.S. 97 (1976).  To state a claim for violation of a prisoner's Eighth Amendment rights due to inadequate medical care, the prisoner must allege facts evidencing a deliberate indifference to his serious medical needs. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991).  To succeed on a claim of deliberate indifference, Plaintiff must satisfy two elements, an objective one and a subjective one.  *Wilson*, 501 U.S. at 300.  The objective element is satisfied by a showing that the plaintiff had a serious medical need. *Wilson*, 501 U.S. at 297; *Farmer v. Brennan*, 511 U.S. 825 (1994).  "To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official

being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001), citing *Farmer*, 511 U.S. at 837. Emphasizing the subjective nature of this inquiry, the Supreme Court has noted that "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838. Deliberate indifference requires more than simple medical malpractice, and has been described as "an unnecessary and wanton infliction of pain" or that which is "repugnant to the conscience of mankind." *Estelle*, 429 U.S. at 105-06.

In this case, Plaintiff has arguably stated a claim for medical malpractice – Dr. Malatinsky allegedly prescribed a combination of medications to Plaintiff that were contraindicated and resulted in an unnecessary splenectomy. However, Plaintiff's complaint does not contain a single allegation that: Dr. Malatinsky knew that these medications should not be taken together at the time he prescribed them; knew that if they were prescribed together the medications would cause injury to Plaintiff, and yet prescribed them anyway. As such, Plaintiff has failed to allege facts which, if true, would support the subjective component of a deliberate indifference claim.[6] Similarly, Plaintiff's claim that Dr. Malatinsky was deliberately indifferent in directing medical staff not to treat his side-effects failed to allege that Dr. Malatinsky was

---

[6] Defendants' immunity claim need not be addressed but provides an alternate basis for dismissal.

aware that his directive would create a substantial risk to Plaintiff, which Dr. Malatinsky then disregarded.[7] *Comstock*, 273 F.3d at 703.

### 2. *Plaintiff's Claims Against Zych cannot be Premised upon Respondeat Superior*

Allegations premised on respondeat superior liability are foreclosed in § 1983 actions (and by analogy *Bivens* actions). *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978). In *Bellamy v. Bradley*, the Sixth Circuit stated that in order to impose liability on supervisory personnel, a Plaintiff must show more than having brought offending conduct to the attention of supervisory officials:

> In *Hays v. Jefferson County,* 668 F.2d 869 (6th Cir. 1982), we held that the § 1983 liability of supervisory personnel must be based on more than the right to control employees. Section 1983 liability will not be imposed solely upon the basis of respondeat superior. There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate. *Hays*, 668 F.2d at 872-74.

Moreover, a supervisory official's awareness of alleged *illegal* conduct *after the fact* does not provide a basis for imposition of damages under 42 U.S.C. § 1983. *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989). Merely being aware of a prisoner's complaint and failing to take corrective action is insufficient to impose liability on supervisory personnel under § 1983. *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988), *cert. den.*, 488 U.S. 1007 (1989). The supervisor must have directly participated in the alleged *wrongful* conduct:

---

[7]Arguably, this complaint allegation was also not exhausted because it was not included in Plaintiff's grievance as "closely related" to the splenectomy issue. 28 C.F.R. § 542.14(c)(2).

> [A] supervisory official's failure to, control, or train the offending individual is not actionable, unless the supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it."

*Id*. at 429.

Like his complaint allegations, Plaintiff's brief in response to Defendants' motion relies solely upon the fact that Zych "is the Chief Executive of FCI-Milan who exercise[s] final unrestricted authority over all inmates medical care. . . [and was] fully aware of Plaintiff's serious medical needs" but chose " to continue to deny those medical needs by solely relying on his medical director's false information without investigating it himself." (Dkt. No. 1, ¶7 and Dkt No. 17, p. 13)  Plaintiff's complaint fails to allege that Zych either encouraged or directly participated in his claimed mistreatment.  Therefore, Plaintiff's allegations are insufficient to state a claim of deliberate indifference against Zych.

### 3.   *The BOP cannot be a Party to a Bivens Action*

The BOP is not a proper party in a *Bivens* action.  In *Federal Deposit Ins. Co. v. Meyer*, 510 U.S. 471, 483-486 (1994), the Supreme Court held that claims under *Bivens* could not be raised against federal agencies.  *See also Hammons v. Norfolk Southern Corp.*, 156 F.3d 701, 702 (1998), *overruled on other grounds by Correctional Serv. Corp. v. Malesko*, 534 U.S. 61 (2001) (summarizing the rationale of *Bivens* that the deterrence and purpose of it would be lost by expanding liability from individual federal officers to federal agencies).  Therefore, Plaintiff's claims against the BOP must also be dismissed.

## IV. CONCLUSION

For the reasons discussed above, the undersigned recommends that Defendants' motion to dismiss and, alternatively, Dr. Zych's motion for summary judgment (Dkt. No. 13) be GRANTED and Plaintiff's complaint DISMISSED WITHOUT PREJUDICE.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

S/Mark A. Randon
MARK A. RANDON
UNITED STATES MAGISTRATE JUDGE

Dated: May 14, 2010

*Certificate of Service*

*I hereby certify that a copy of the foregoing document was served on the parties of record on this date, May 14, 2010, electronically and a copy sent via first class mail.*

                                                *s/Melody R. Miles*
                                                *Case Manager to Magistrate Judge Mark A. Randon*